JENKINS v. MAHONEY et al.

(Supreme Court, Appellate Division, First Department. February 3, 1911.)

1. BROKERS (§ 39*)—COMPENSATION.

    Where plaintiff and a corporation were jointly employed to bring about a sale of real estate, and the corporation contracted for a specified sum as compensation, which was paid, plaintiff could not recover of the ven-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dor a certain commission on the ground that it was the usual and customary commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 37, 42, 64; Dec. Dig. § 39.*]

2. BROKERS (§ 86*)—COMPENSATION—EVIDENCE.

In an action by a broker for commissions, evidence *held* insufficient to warrant a recovery by plaintiff.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

3. BROKERS (§ 71*)—COMPENSATION.

A broker must establish that he was duly employed, and that he performed his services by procuring a customer ready, willing, and able to make the contract upon the terms proposed.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 56; Dec. Dig. § 71.*]

Appeal from Trial Term, New York County.

Action by Samuel A. Jenkins against Robert J. Mahoney and another. Appeal by defendant Mahoney from a judgment in favor of plaintiff, and from an order denying a motion for a new trial. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

Douglas & Armitage (Paul Armitage, of counsel), for appellant. Jacob Friedman, for respondent.

CLARKE, J. The complaint alleges that heretofore at the city of New York, between and including the months of December, 1907, and June, 1908, the plaintiff and the defendant H. H. Fuller Realty Company, at the special instance and request of the defendant Mahoney, duly rendered to the said Mahoney certain work, labor, and services as real estate brokers in procuring for the defendant Mahoney a purchaser; to wit, the Bryne Coffee Roaster Company, for the property at the southwest corner of Forty-Third street and Eleventh avenue, New York City; that through the said work, labor, and services of the said plaintiff and the said defendant Fuller Realty Company said Mahoney sold said property in the month of June, 1908, to the said Bryne Coffee Roaster Company for the sum of $135,-000; that the fair, reasonable, and usual value of the said work, labor, and services was 1 per cent. thereof, amounting to $1,350, for which he demanded judgment against Mahoney; that the Fuller Realty Company has been joined as a defendant because it has refused to join with plaintiff in this action. The answer denies the allegations of the complaint, and for a separate defense alleges that prior to the commencement of this action defendant had fully paid, satisfied, and discharged the alleged cause of action and all and every claim in respect to the matters mentioned in the complaint by paying to the defendant H. H. Fuller Realty Company all the money due from this defendant, or which he was liable to pay with respect to any of the above-mentioned matters.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The case was sent to the jury under a charge that:

"If you find from all the evidence that the plaintiff did bring the defendant Mahoney and the Burns Coffee Roaster Company together, and his efforts led to the final purchase of the property by the Burns Coffee Company, then your verdict may be for the plaintiff for $1,527.55, including the claimed interest."

The jury returned a verdict for $350, with interest from the date of the transaction, and from the judgment entered thereon and from the order denying the motion for a new trial defendant Mahoney appeals.

The cause of action is therefore based upon the proposition that the plaintiff and the H. H. Fuller Realty Company were jointly employed by the defendant to procure a purchaser for the property at the southwest corner of Forty-Third street and Eleventh avenue; that plaintiff and said company procured the purchaser to whom the property was sold, and hence that the commissions of 1 per cent. on the purchase price thereof had been earned.

The first objection to this judgment, as it seems to me, is that, if it could be held to have been established by the evidence that the plaintiff and the Fuller Company had been jointly employed and had brought about the sale, there is no evidence that any agreement had been entered into to pay a commission of 1 per cent. of the purchase price, and that the plaintiff cannot stand upon the allegation that, in the absence of specific agreement, that was the usual and customary commission, because it affirmatively and without contradiction appears that the Fuller Company made, with the defendant Mahoney a specific contract for $700 which has been paid. So that, if the brokers are to be considered partners or quasi partners, or joint adventurers in this transaction, payment of the whole amount due to one of them as agreed would seem to preclude recovery by the plaintiff against Mahoney and leave at best a cause of action between the joint adventurers; for, if the work of the Fuller Company redounded to the benefit of the plaintiff, then a payment by Mahoney to the Fuller Company must, so far as the plaintiff is concerned, be considered as a payment for his benefit. In no view of the issues or of the evidence can we find a logical basis for the verdict of the jury of $350.

In the second place, I do not think any cause of action was made out. Plaintiff was a real estate broker and defendant Mahoney was a builder. In March or April, 1907, the property in question at the southwest corner of Forty-Third street and Eleventh avenue was owned by one Rudolph. It was for sale, and was on the books of several real estate brokers, among others the Jacob Ritchburg Company, which had its signs upon the property. At this time one Gibson was in the employ of Ritchburg. That this property was for sale was also known at that time to the H. H. Fuller Realty Company, and also to another broker by the name of Easton, who informed the plaintiff of that fact, and he testified that, if the property had been sold through his efforts, he had an arrangement by which he would divide the commissions received from the owner, Rudolph,

with Easton, and that he himself had never seen Rudolph nor had any personal relations with him.

Plaintiff testified that he offered Mahoney this property, and told him that he could purchase it for $50,000, and that plaintiff had got the property from another broker; that Mahoney said to him: "I don't want to buy those lots and carry them because that would eat up the profit." "He said: 'You get a client or tenant who will lease a six-story building erected on these lots, or a client who will purchase a six-story building erected on the lots,' and he said, 'I will buy them and go ahead with operations.'" In another version of this conversation, plaintiff testified that Mahoney said: "'If you can't get the tenant or a client to buy yourself, go out to some of the other brokers, and see if they have anybody and bring them here'; and he said, 'You can divide the commission with me.'" It must be borne in mind that at this time Mahoney did not own the property, and that the plaintiff, upon his own testimony, was acting for the owner Rudolph through his relations with Easton to accomplish a sale for Rudolph.

In the summer of 1907 plaintiff saw Mr. Fuller of the H. H. Fuller Realty Company, and, without disclosing Mahoney's name, told him that he had a builder who would buy this property, which Fuller knew was for sale, and erect a building thereon if a person could be procured who would lease or buy the property after the buildings had been erected. It should be noted here that Mahoney had never given any terms of any kind to the plaintiff upon which he would buy in the first instance or sell in the second, or the character or plan of the buildings to be erected. Thereafter three attempts were made. First, with the Manhattan Chocolate Company. Negotiations were had by Mahoney with that company through the plaintiff, the Fuller Company having nothing to do with it. This was in September, 1907, and, as the plaintiff testified, fell through on account of the panic of that year. Second, with a furniture dealer named Engleman, in June or July, 1907. This transaction was not finished. Indeed, it did not get far enough advanced to have it taken up with Mahoney. Third, the erection of a factory for a silk house at Paterson, N. J. This, of course, had nothing to do with the property in suit, and Mahoney never heard of it, and nothing came of this. These were all of the definite efforts made by the plaintiff by himself or with the Fuller Realty Company, and they had all ended before October, 1907, and Mahoney's name had not been disclosed to Fuller. In November or December, 1907, the plaintiff introduced Gibson to Mahoney, and told Mahoney that Gibson had a client, the H. H. Miner Lithographing Company, who would consider leasing a building on that corner. Gibson was then in the employ of Ritchburg. The plaintiff testifies: "Nothing came of that transaction. After that, I did not have any further conversation with Mahoney in regard to Gibson." In April, 1908, Gibson went into the employ of the H. H. Fuller Realty Company, and some weeks thereafter Gibson introduced Mahoney to Fuller, and they had a talk about this Eleventh avenue property. Fuller testified:

"Mahoney said he would be interested in erecting a building if we had a client who was responsible, and would pay a sufficient price. I said we had such an application. We would find out the details of the building that the man wanted, submit them to Mr. Mahoney, and let him give us his figure."

The clients were Jabez Burns & Sons. Thereafter negotiations were carried on through the Fuller Company between Mahoney and Jabez Burns for a long time, and finally resulted in the consummation of an agreement under which Mahoney agreed to erect upon the property such building as Burns wanted after he had purchased it from Rudolph and sell it to Burns for $135,000. The plaintiff testified, and it is conceded upon the record, that he had never heard of Jabez Burns, and had nothing whatever to do with the negotiation and transaction, and heard nothing at all about it until after it had been completed. So that upon the initial conversation in April, 1907, when he called Mahoney's attention to the Rudolph property, with the statement that it could be bought for $50,000, he claims the right to recover commissions upon a transaction occurring a year and three months thereafter, of which he had never heard until it was entirely completed, carried out by another broker, to whom the plaintiff had never mentioned Mahoney's name, and with a customer of whom the plaintiff had never heard. It seems to me to hold that the plaintiff had made out a cause of action upon these facts would be the equivalent of saying that if an owner or proposed purchaser ever mentioned a piece of property to any broker, and thereafter at any time, and under any circumstances, and through any intermediaries, should happen to sell or buy, he would be subject to suit by whatsoever broker he may have chatted with. Such is not the law. The broker must establish that he was duly employed, and that he did perform his services by procuring a customer ready, willing, and able to make the contract upon the terms proposed. The evidence wholly fails, it seems to us, to support that proposition.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.